## JACKSON v. FOREST PRODUCT CHEMICAL CO.

———

(April 1, 1929. Opinion and Decree.)
(May 27, 1929. Rehearing Refused.)

———

J. C. McGee, of New Orleans, attorney for plaintiff, appellant.

Harry McEnerny, Jr., of New Orleans, attorney for defendant, appellee.

JONES, J. Plaintiff, an ignorant negro, who can neither read, nor write, sued for $6000 compensation (subject to a credit of $240, amount already paid) for injuries to the index and third fingers of his left hand, on April 15th, 1927, caused by a fall from a ladder while unloading a freight car in the yard of defendant.

Defendant, after alleging that $240 had been paid in error, to plaintiff, urged the following defenses:

First. That plaintiff was employed by an independent contractor;

Second. That he had been paid all compensation due, and had been discharged by its physician as able to work.

There was judgment for defendant and plaintiff has appealed to this Court.

The following facts are undisputed:

Plaintiff, who had then been unloading wood at defendant's charcoal factory in this city for at least four months, fell from a ladder, on April 15, 1927, while climbing a freight car and was sent at once to the physician of the company, who treated the index finger of his left hand, until the last of July, 1927; he was then advised to resume his work and made vain attempts to do so for two days, only to be refused further payment on the ground that he was not well enough to work.

At the time of the accident he was forty-one years old and had always been strong and well.

There is a dispute about the following questions:

Both plaintiff, and Fred Davis, another colored employee, who had held the same position with defendant just prior to the employment of plaintiff, testify that plaintiff was employed by the defendant company, through an employee, called "Frenchy"; that he received his pay in an envelope every week just as the other employees did; that he was required to unload cars of wood and then shove the cars back; and that Allen, the alleged independent contractor, had no control over his work and did not direct or pay him, in any way, but merely assisted in unloading the cars.

Plaintiff testifies that under advice of defendant's physician, after his treatment by splints and hot applications had failed to relieve the stiffness in his fingers, he had four teeth pulled, but this did no good.

Ford, the foreman of defendant company, testified that it had a verbal contract with Allen to unload all cars of wood, at a price of eight dollars per car; that plaintiff was working for Allen and that his name had never been carried on the payroll; that he had never been paid by defendant; that "Frenchy" was a watchman and had no authority to employ or discharge labor; that Allen could not read or write but that he was paid the total amount for unloading cars in an envelope, and made his mark on payroll, later dividing the money with plaintiff; that at the time of the accident he had sent plaintiff to the physician of their insurance company and had made a report to the manager, stating that the witness had fallen from the car and had hurt his index finger.

On cross-examination he admitted that plaintiff had come back to the plant and worked for two days and he had told him to go back to the doctor, as plaintiff asserted the injured fingers still incapacitated him.

W. R. Carter, the branch manager of the defendant company, whose head office is in Memphis, Tenn., generally confirmed the statements of Ford, but on cross-examination admitted that sometimes "Frenchy" had been sent out to get employees, and at one time, years before, had attempted to exercise that power, which was later cancelled.

The payrolls were not produced in Court and there was no explanation as to why the plaintiff was sent to the physician of the company and why he was paid for twelve weeks at the rate of $20 per week.

It will thus be seen that the identity of the employer is by no means clear from the evidence. The testimony of the two colored witnesses who swear contradictorily to the two white witnesses, is confirmed by the twelve weeks payment, a strongly corroborative circumstance, for it would be almost unheard of, that an insurance company should pay a laborer without first investigating his status.

The preponderance of the evidence is thus with plaintiff on this point, but under the decision of the Court in the leading case of Zeller vs. Louisiana Cypress Lumber Co., 9 La. App. 609, 121 So. 670, in which writ was denied by the Supreme Court on January 29th, 1929, the defense of independent contractor loses its importance.

In this, the most recent case where the same defense was made, it was held that the dependents of an employee killed in

the course of his employment under a general logging contractor, might sue the lumber company, as principal, along with the contractor. See also Gaiennie vs. Chisholm, 3 La. App. 358; Clementine vs. Ritchie, 1 La. App. 296; Wisinger vs. White Oil Corp., 24 Fed. (2nd Ed.) 101.

Defendant relies on the case of Johnson vs. Vincennes Bridge Company, decided on October 29, 1928 (La. Sup.) 118 So. 820, but this decision is not controlling, as the facts differ substantially.

The evidence clearly shows that at the time of the trial, plaintiff's index finger and the third finger of his left hand were still swollen stiff and incapable of full flexion.

The physician who treated him at the Charity Hospital, after he was discharged by defendant's doctor, testified that the X-ray picture then taken showed arthritis in the terminal bones of the finger, causing loss of flexion and that the plaintiff was suffering at time of the trial with arthritis, which had been aggravated by the fall and that he could not work more than a few hours at a time.

The physician of the defendant company testified that he had an X-ray picture taken at the time of the injury, which showed the index finger was injured and he had placed both fingers in splints simply to immobilize them; that he had a blood test made which showed negative; that the fall might have produced the damage to both fingers, but that in his opinion, the man could have resumed work at the end of July; that plaintiff had reported to him his inability to do so after a two days trial and he had referred the plaintiff to Dr. Martin, a distinguished surgeon of this city.

Dr. Martin testified that the two fingers were swollen and stiff at the time of trial, but only the index finger of the left hand showed signs of arthritis, was swollen and rigid when he first examined him on July 12, 1927, although all of the fingers of the left hand had some impeded motion, but in his opinion, plaintiff should have returned to work about the last of July, 1927, as work was always the best thing in such circumstances to prevent the patient's becoming unduly anxious and losing confidence. Had the patient returned to work, as instructed, his fingers would have been better by this time and he could have been doing manual labor. Unfortunately, the record does not contain Dr. Martin's report, although it was offered in evidence.

It is thus seen that all the doctors agree that plaintiff's fingers were swollen and stiff, and lacking in flexion at the time of trial, but they disagree as to whether plaintiff had been able to work at the end of July, 1927, and as to the amount of hard work plaintiff could then do, the results of continued efforts to hard work are, necessarily, uncertain, but one fact stands out that plaintiff tried it for two days and then had to quit.

As the amount earned by plaintiff, according to the number of cars unloaded was from $18 to $35 per week, and as the evidence is not conclusive as to the sum averaged by plaintiff, we take the amount allowed by defendant as the basis for compensation, viz: $20 per week.

It is therefore ordered, adjudged and decreed that there be judgment in favor of plaintiff, Will Jackson, and against defendant, The Forest Product Chemical Company, for compensation at the rate of $13 per week for a period of fifty weeks, with interest from judicial demand, subject to a credit of $240.